• Howry, J.,
delivered the opinion of the court:
This is a suit wherein the court is asked to direct the accounting officers of the Treasury to give the plaintiff, as pay *33 master in the Army, credit in the settlement of his accounts for $5,551.90, which amount, he says, was lost through the embezzlement of a clerk under the circumstances disclosed by the findings.
Section 1059 of the Revised Statutes provides relief on the claim of any paymaster, quartermaster, commissary of subsistence, or other "disbursing officer of the United States for relief from responsibility on account of capture or otherwise, while in the line of his duty, of Government funds, vouchers, records, or papers in his charge and for which such officer was and is responsible.
Section 1062 defines the jurisdiction of the court to ascertain the facts of any loss of these disbursing officers in the cases provided for in the above-mentioned section, and makes it the duty of the court to make a decree setting forth the amount and for the proper accounting officers of the Treasury to allow to such officer the amount decreed by the court as a credit in the settlement of his accounts.
It is contended by the defendants that relief should be denied in this case because the act under which the relief is prayed relates to a period of war.
Cases of this kind have been too often before the courts, and especially before this court, to consider a plea to the jurisdiction because the loss is the result of causes other than capture in time of war.
Again, it is suggested that the record presents a case of breach of trust and that such a case is not within the statute. If this relates to jurisdiction, the objection is not well taken, because every loss without fault or negligence is the subject-matter of relief. A loss occasioned by a breach of trust may, under some circumstances, possibly, come within that rule. We do not say that it would or would not. It is not for trial courts to refuse to hear and determine in any case of loss without determining whether the loss was the result of fault or negligence from the facts in evidence.
Plaintiff’s contention is that he was justified in trusting the clerk who appropriated the money, because it was impossible for the plaintiff to attend personally to all-the duties imposed upon him on the transport and act as clerk. He for *34 tifies his argument by the decision of this court in the early case of Howell (7 C. Cls. R., 512), where it was held that the officer was entitled to credit for the act of his clerk in taking-money from the safe under circumstances thought to be similar to this case. There the court found that the fund appropriated was necessarily under the control of a chief clerk. The funds here were not necessarily under the control of this subordinate. The plaintiff has not proven that it was impossible for him to safely keep the money himself. For aught that appears he could have done so, but he permitted his clerk to continuously carry the combination outside of any effort to change it or care for the money otherwise.
Neither is it shown that this subordinate was commended for his honesty. The general presumption of good character ordinarily obtains, but when plaintiff continued the employment of the son of his predecessor without inquiry into the habits and character of the young man he did so at his own risk.
It is contended next that “ a paymaster may in the discharge of his duties intrust a hitherto worthy clerk in various ways without being liable for negligence.” (Stevens v. United States, 41 C. Cls. R., 344.)
This is true in the abstract and possibly applicable in case of a money loss. But for the reason stated this rule can not be invoked on the facts presented by this record. The officer should have retained the general control of the money. But it is shown that he turned all his funds over to his clerk and gave this clerk the key or combination, and subsequently had to force the safe open, only to find that the funds had been taken.
It is claimed, however, that because the circumstances point to the conclusion that the embezzling clerk stole the money for which plaintiff was responsible and deposited a part of it -in bank to the credit of the clerk’s father to make that father’s accounts balance, and because the United States received that money for another, that plaintiff should be credited with the amount. In other words, plaintiff contends that the credit was erroneously entered and he should now have the benefit of the amount actually taken.
*35 There is no proof that the sum deposited in the bank and covered into the Treasury was a part of the fund taken from plaintiff. The identity of the funds stolen with that much deposited in the bank and which subsequently went into the Treasury is wanting. But suppose the identity of the two sums be proven, we are unable to see how this could be available to the plaintiff in not accounting for the funds in his possession. Another person and another account got the benefit of whatsoever was credited. That other person was discharged from his liability to the Government, and he is not before the court in this proceeding. If the credit was erroneously given to one not entitled to it through the scheme of the defaulting clerk, defendants are not at fault, but plaintiff is. Quartermasters’ funds and commissary funds were receipted for by the plaintiff, and he became liable to account for this money as subsistence funds. Army transportation funds were credited in the name of some other officer. The Government would apparently be without remedy if we should direct plaintiff’s accounts to be credited with the fund taken from him.
Accordingly the petition must be dismissed.